UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MORRIS BLOM, as Special Administrator for the Estate of Sylvia Wulff, | ) ) ) ) | CIV. 10-4145-KES |
| Plaintiff, | ) ) ) | ORDER GRANTING MOTION TO DISMISS |
| vs. | ) ) | |
| THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, individually and d/b/a Good Samaritan Society Albert Lea, | ) ) ) ) ) | |
| Defendant. | ) | |

Defendant, The Evangelical Lutheran Good Samaritan Society (Good Samaritan), moves the court to extend the dispositive motions deadline within the court's scheduling order and to allow further briefing on the issue of res judicata. Docket 29. Good Samaritan also moves the court to dismiss plaintiff's claims with prejudice because a Minnesota judgment bars this court from relitigating the issues due to res judicata. Docket 33. Plaintiff, Morris Blom, as special administrator for the estate of Sylvia Wulff, resists these motions. Docket 35 & Docket 30. Blom claims that Good Samaritan filed untimely motions to extend and dismiss, so the motions should be denied, and res judicata is inappropriate in this case. Blom moves to consolidate his cause of action with other similarly situated plaintiffs' claims against Good Samaritan.

Docket 24. Good Samaritan resists that motion. Docket 27. For the following reasons, Good Samaritan's motions to extend and to dismiss are granted, and all other motions are denied.

**BACKGROUND**

Between January and May of 2008, four teenage nursing assistants who worked at the Good Samaritan Society of Albert Lea, Minnesota, engaged in systematic abuse of a number of elderly adult residents of Good Samaritan's facility. Docket 1 at 2. One of the victims of this abuse was Sylvia Wulff. Wulff's power of attorney brought a personal injury claim on her behalf in Minnesota state court on January 20, 2010. Docket 34-2. Three other victims of the abuse were included in that action. Three of the four victims died during the course of litigation. The claim of the fourth plaintiff was arbitrated. The causes of death are unrelated to the abuse. Docket 35 at 1-2.

After the decedents' deaths, Good Samaritan moved for summary judgment as to each of the deceased plaintiffs because it alleged that the cause of action abated under Minnesota law. The Minnesota court allowed the estates to voluntarily dismiss their claims without prejudice in Minnesota so the claims could be brought in South Dakota. The court reasoned that plaintiffs "had sought the voluntary dismissals early in the litigation and that [Good Samaritan] would not be prejudiced merely by having to defend the same claims in South Dakota federal court." *Butts ex rel. Iverson v. Evangelical*

*Lutheran Good Samaritan Soc'y*, 802 N.W.2d 839, 840 (Minn. Ct. App. 2011). Morris Blom then filed this cause of action on behalf of Sylvia's estate on September 29, 2010. Docket 1. In August of 2011, the Minnesota Court of Appeals reversed the trial court's dismissal of the Minnesota *Butts* decision and held that Good Samaritan was entitled to summary judgment and dismissal with prejudice. *Butts*, 802 N.W.2d at 843-44. The Minnesota Supreme Court denied further review in October of 2011. Docket 34-5. The judgment and dismissal became final on November 28, 2011, when the case was dismissed with prejudice. Docket 34-6 at 1.

Meanwhile, four different actions involving the victims of the nursing abuse were pending in front of this court. In June of 2010, Good Samaritan moved to dismiss one of those cases, claiming that Minnesota, rather than South Dakota, law applied to the action. Minnesota law provided that a personal injury cause of action abates with the death of the claimant. This court denied Good Samaritan's motion on December 28, 2010, and applied South Dakota's then-existing choice-of-law rule to conclude that South Dakota had "the most significant relationship" to the claim. *Jacobs ex rel. Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, Civ. No. 10-4035, 2010 WL 5439767, at *4-6 (D.S.D. Dec. 28, 2010). On September 22, 2011, plaintiff moved to consolidate his case with a number of other plaintiffs suing Good Samaritan for the same conduct. Although the dispositive motions deadline in

3

the case was November 15, 2011, Good Samaritan filed a motion to accept briefing and to extend and suspend the dispositive motions deadline on November 29, 2011. Docket 29.

While briefing continued in the *Blom* matter, the court granted summary judgment to Good Samaritan in two of the other cases that were before the court. *See Butts v. Evangelical Lutheran Good Samaritan Soc'y*, Civ. No. 10-4063, ___ F. Supp. 2d ___, 2012 WL 426692 (D.S.D. Feb. 9, 2012); *Jacobs ex rel. Estate of Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, Civ. No. 10-4035, ___ F. Supp. 2d ___, 2012 WL 346670 (D.S.D. Feb. 2, 2012). In the South Dakota *Butts* case the court concluded that the action could not proceed because, for several reasons, the Minnesota *Butts* decision was res judicata. *Butts*, 2012 WL 426692, at *2-3. The court determined that res judicata applied because both actions included the same parties or their privies, the same set of underlying facts, there was a judgment on the merits in Minnesota, and the parties had a full and fair opportunity to litigate their claims. *Id.* at *3-5. Good Samaritan now moves to dismiss this action based on res judicata.

## STANDARD OF REVIEW

The standard of review for a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) or 12(c) is the same. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488

(8th Cir. 1990). Federal Rule of Procedure 12(b)(6)[1] provides that dismissal is appropriate for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The court will assume that all facts alleged in the complaint are true "no matter how skeptical the court may be." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1959 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court construes "the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the complaint must " 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S. Ct. at 1960 (citing *Twombly*, 550 U.S. at 570). The complaint must also contain factual allegations that raise the "right to relief above the speculative level . . . ." *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (citation omitted). The court will, however, "reject conclusory allegations of law and unwarranted inferences." *Silver v.*

---

[1] Although the court considers a number of documents outside of the pleadings, a motion to dismiss is the proper rule through which to analyze Good Samaritan's claims because the court hereby takes official notice of those documents as public records. Those documents include the Minnesota *Butts* summons and complaint (Docket 22-2), the Minnesota *Butts* Court of Appeals decision (Docket 22-4), the Minnesota Supreme Court order denying review in *Butts* (Docket 22-5), and the Minnesota District Court's final order and judgment (Docket 22-6). The court's review of these documents does not convert this motion to dismiss into a motion for summary judgment. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.") (citation omitted).

*H&R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997) (citation omitted). If "the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted).

## DISCUSSION

### I.  Motion To Extend Deadlines

Good Samaritan moves for an extension of the court's scheduling order mandating that all dispositive motions be filed by November 15, 2011, because the Minnesota Court of Appeals' decision became final and would have a substantial impact on this case. Blom claims that Good Samaritan cannot satisfy good cause or excusable neglect, and Good Samaritan's motion to extend should be denied in the interests of judicial economy.

Federal Rule of Civil Procedure 16 requires that the district court give a scheduling order that sets the deadlines for the various stages of litigation. *See* Fed. R. Civ. P. 16(b) (stating that the court must set deadlines to amend the pleadings, join additional parties, and file motions, and that the rule allows the court to set additional deadlines). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether the court may extend the time set in the scheduling order is controlled by Federal Rule of Civil Procedure 6, which provides:

>  (b) Extending Time.
>
>>  (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>>
>>>  (A) with or without motion or notice if the courts acts, or if a request is made *before* the original time or its extension expires; or
>>>
>>>  (B) on motion made *after* the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1) (emphasis added). Rule 6 and Rule 16 are to be interpreted in a way that achieves "the just, speedy, and inexpensive determination of every action[.]" Fed. R. Civ. P. 1. Because Good Samaritan moved to extend the deadline to file dispositive motions after the deadline passed, it will have to show good cause and that its untimeliness was due to excusable neglect.

    **A.**    **Excusable Neglect**

The "excusable neglect" standard is an " 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.' " *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (citation omitted). Whether or not neglect is excusable is an equitable determination, which takes into account all of the circumstances surrounding the omission. *Id.* The following factors guide the court's inquiry: (1) "the possibility of prejudice to the [nonmovant]"; (2) "the length of [the movant's]

delay and the possible impact of that delay on judicial proceedings"; (3) "[the movant's] reasons for delay, including whether the delay was within [the movant's] reasonable control"; and, (4) "whether [the movant] acted in good faith." *Id.*

Blom may be prejudiced if the court grants Good Samaritan's request to extend the scheduling order and considers the motion to dismiss because Blom had to spend the time and resources answering dispositive motions that were filed past the deadline. Because this motion to dismiss is based on an issue of res judicata, however, it is an issue that would have come up throughout the course of the litigation regardless of timing. Although Blom would likely be prejudiced if the court extends the filing deadline, it is not a substantial prejudice under the facts of this case. The length of Good Samaritan's delay in filing the motion to extend the deadline was 14 days past the deadline. Good Samaritan's untimely motion to dismiss was filed 27 days beyond the deadline. This delay is slight considering the circumstances.

The reasoning behind Good Samaritan's delay in filing its motions was in part due to inadvertent error and in part for a legitimate reason. Good Samaritan was waiting for the Minnesota *Butts* decision to become final. Docket 29 at 3-4. Although the Minnesota Supreme Court denied further review on October 26, 2011, it took until November 28, 2011, for the judgment that dismissed the case with prejudice to be issued. Docket 34-6. This is a

8

legitimate reason for delay because any issue that could affect the court's ability to hear the cause of action, like res judicata, should be brought to the court's attention. Although it was within Good Samaritan's control to alert the court of the developments in the Minnesota case prior to the expiration of the deadline, the underlying reason for delay, issuance, and timing of the final judgment, was not within Good Samaritan's control. Additionally, there was no indication or proof that Good Samaritan acted in bad faith through its untimely submissions. Because the reason for delay could have a substantial impact on the proceedings, and in the interests of justice and for a complete resolution of the case, the court finds that Good Samaritan has satisfied the excusable neglect standard.

### B.   Good Cause

" 'The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.' " *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citations omitted). The amount of " 'prejudice to the party opposing the modification' and other factors may also affect the decision." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citation omitted).

Typically it is not sufficient "good cause" when a party misses a deadline due to mistake, carelessness, or error. While Good Samaritan agrees that the dispositive motions deadline was missed, in part, due to an inadvertent error,

that was not the only cause for delay. As previously explained, Good Samaritan was waiting for the Minnesota Court of Appeals' *Butts* decision to become final so that it could alert the court that res judicata issues were at play. Docket 29 at 2-3. Even if Good Samaritan had been completely diligent in attempting to follow the scheduling order, the judgment that dismissed the case with prejudice was not final until after the dispositive motions deadline had passed. Docket 34-6. For that reason, the court concludes that such an event is good cause for the court to extend the dispositive motions deadline. Because Good Samaritan has shown both good cause and excusable neglect for its untimely motion, the court will reach the merits of Good Samaritan's motion to dismiss.

## II.  Motion to Dismiss

Good Samaritan argues that res judicata bars plaintiff's claims because both the Minnesota and South Dakota causes of action involve the same parties or their privies and the same operative facts, there was a final judgment on the merits, and plaintiff had a full and fair opportunity to litigate his claim in Minnesota. For these reasons, Good Samaritan states that the Minnesota and South Dakota claims are the same cause of action and cannot be relitigated. Blom claims that res judicata is not applicable because both the parties and the types of claims are distinct in each case. In the alternative,

Blom argues that the court should apply the exception to res judicata because its application would contravene public policy.

Through the Full Faith and Credit Clause, "Congress has specifically required all federal courts to give preclusive effect to the state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry*, 449 U.S. 90, 96 (1980). The Eighth Circuit Court of Appeals has concluded that res judicata is a substantive issue in a diversity case and is controlled by state law. *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997) (citations omitted). "In determining which state's res judicata law applies, 'it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.' " *Id.* (citations omitted).

Because the first *Butts* cause of action was decided in Minnesota, Minnesota law will apply to the res judicata analysis. Minnesota law provides:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein.

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (citation omitted). Res judicata bars a subsequent claim when: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits;

11

(4) the estopped party had a full and fair opportunity to litigate the matter." *Id.* (citations omitted).

### A. The Same Factual Circumstances

The first determination is whether the two claims arise from the same set of factual circumstances. Plaintiff alleges that the Minnesota cause of action is materially different because the Minnesota claims were for civil assault and battery, intentional infliction of emotional distress, and failure to report the maltreatment of vulnerable adults. Docket 35 at 12-13. Conversely, the South Dakota action is for negligent management, negligent supervision, negligent retention, and strict liability. Docket 35 at 10-11. Good Samaritan claims that the facts identified in both the Minnesota and South Dakota complaints are the same and derive from the same conduct, and plaintiff has but one cause of action. Docket 34 at 6.

Res judicata applies not just to claims that were actually litigated but to all claims that stem from the same set of factual circumstances that could have been litigated in an earlier action. *Hauschildt*, 686 N.W.2d at 840. And "a plaintiff may not split his cause of action and bring successive suits involving the same set of factual circumstances." *Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn. 1978). One test to determine whether the first action bars the second action is to ask whether the same evidence is used to sustain both actions. *Hauschildt*, 686 N.W.2d at 840-41 (citation omitted).

The Minnesota *Butts* case stems from the same set of operative facts and circumstances as the South Dakota cause of action because both are based on the nearly identical facts alleged in both complaints. Docket 34-2 at 4-5; Docket 1 at 2-3. The Minnesota and South Dakota actions arise out of the alleged tortious conduct of Good Samaritan employees that occurred from January to May of 2008, and Good Samaritan's failure to protect its residents. The South Dakota claims of negligence against Good Samaritan could have been brought in the Minnesota action. The test is not how the cases are postured, labeled, or brought against the parties, but whether the claims arise from the same set of facts and are proven with the same evidence. Plaintiff cannot split his cause of action. *Mealey*, 263 N.W.2d at 807. *See also Butts*, 802 N.W.2d at 843 ("One cause of action exists in this case, for which a court must determine the applicable law."). Because the Minnesota and South Dakota claims involve the same set of factual circumstances that are supported by the same evidence, the first prong of the res judicata test is met.

### B. The Same Parties or Privies

The Minnesota claim also involves the same parties or privies as the South Dakota claim. Under Minnesota law, those in privity "are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." *Porta-Mix Concrete, Inc. v. First Ins. East Grand Forks*, 512 N.W.2d 119, 122 (Minn. Ct.

13

App. 1994) (citation omitted). Privity may also exist if a person identifies an interest with another person that represents the same legal right. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (citations omitted). One party is in privity with another if that person has a "controlling participation" or an "active self-interest" in the proceeding, is a successor in interest, or has interests that are represented by a party to the action. *Id.* at 119.

There is no dispute that Good Samaritan is the defendant in both Minnesota and South Dakota. The plaintiff in this action, Morris Blom, is the special administrator of the estate of Sylvia Wulff. Because Blom is the plaintiff, he has a "controlling participation" in the action and also represents the successor in interest. Therefore, Blom is in privity with Wulff, the original wronged party. Blom also had a "controlling participation" in the Minnesota action because he was Wulff's power of attorney and directly represented Wulff's interests and brought the claim on her behalf. Good Samaritan can establish that Blom, Wulff, and Wulff's estate are in privity or are the same party. Because both claims involve the same parties or their privies, this prong supports the application of res judicata to bar this claim.

### C. Final Judgment on the Merits

The third prong requires the court to decide if there was a final judgment on the merits in the first case. For res judicata, a judgment is final when "the appellate process is exhausted." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*,

715 N.W.2d 484, 488 (Minn. Ct. App. 2006) (citation omitted). The Minnesota Supreme Court has stated that "[s]ummary judgment is a determination on the merits." *Burma v. Stransky*, 357 N.W.2d 82, 89 (Minn. 1984) (citation omitted). Specifically, dismissal of a claim that is based on a statutory defense constitutes a decision on the merits and bars any subsequent relitigation of the same cause of action. *See Nitz v. Nitz*, 456 N.W.2d 450, 452 (Minn. Ct. App. 1990) ("A dismissal based on statute of limitations grounds is a decision on the merits, and is a bar to a second action brought under a different limitation period where the claims are substantially the same.").

In *Butts*, the Minnesota Court of Appeals determined that the lower court erred because "the district court deprived [Good Samaritan] of an existing defense" when it allowed plaintiffs to voluntarily dismiss the claim even though Minn. Stat. § 573.01 provided that plaintiffs had no viable claims following the decedents' deaths. *Butts*, 802 N.W.2d at 843. The court held that summary judgment and dismissal with prejudice was appropriate because there was no dispute that the residents' deaths were unrelated to their claims of personal injuries. *Id.* After the Minnesota Supreme Court denied further review, that determination became final and a judgment was entered for Good

Samaritan.[2] This is a final determination on the merits such that prong three of the res judicata analysis is satisfied.

### D. Full and Fair Opportunity to Litigate

The final element that must be satisfied is whether the parties had a full and fair opportunity to litigate the matter on the merits. "[W]hether a party had a full and fair opportunity to litigate a matter generally focuses on 'whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.'" *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (citation omitted). The Minnesota litigation progressed to the point of summary judgment. Plaintiff had the opportunity to argue the issue of survivability, but he chose to admit that the claims would abate under Minnesota law. *Butts*, 802 N.W.2d at 843. Plaintiff did not note any lack of due process or unfulfilled procedural hurdles that indicate he did not have a full and fair opportunity to litigate the claims in Minnesota. For these reasons, plaintiff had a full and fair opportunity to litigate the issue of whether the decedent's claims survived her death in the

---

[2] Judgment should be entered for the successful party upon the Minnesota Supreme Court's denial of a petition for review. *See* Minn. R. Civ. App. P. 136.02; *Hoyt Inv. Co. v. Bloomington Comm. & Trade Ctr. Assocs.*, 418 N.W.2d 173, 176 (Minn. 1988).

Minnesota action and any subsequent attempt to litigate it again is barred by res judicata.

Plaintiff argues that res judicata is a flexible and equitable doctrine, and the court should not apply it because its application would contravene public policy considerations. Docket 35 at 14-15. Minnesota has adopted a narrow exception to the stringent use of res judicata when its application goes against public policy. *See AFSCME Council 96 v. Arrowhead Reg'l Corr. Bd.*, 356 N.W.2d 295, 299 (Minn. 1984) ("Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy[.]"). Plaintiff claims that the public policy at issue is South Dakota's interest in ensuring that corporations doing business in the state do not operate in a harmful manner. Docket 35 at 15.

This is the type of case where res judicata should and does apply; therefore, the exception to the application of res judicata is not warranted in this case. Because all the prongs of the res judicata test have been satisfied, Blom has failed to state a claim upon which relief may be granted. Even taking all the facts alleged in the complaint to be true, the Full Faith and Credit Clause forbids this court to rehear an action that has been decided by the courts of Minnesota.

17

## CONCLUSION

Although Good Samaritan filed untimely motions to extend and to dismiss, the court finds that both good cause and excusable neglect are met in this case. Good Samaritan has shown that plaintiff's South Dakota action is barred by res judicata because the factual circumstances are the same as in the Minnesota claim, both claims have the same parties or their privies, the Minnesota action constitutes a final judgment on the merits, and the parties received a full and fair opportunity to litigate their claims in Minnesota. Plaintiff has failed to state a claim for which relief may be granted and his claim is dismissed. Accordingly, it is

ORDERED that Good Samaritan's motion to accept briefing and to extend deadlines (Docket 29) is granted.

IT IS FURTHER ORDERED that Good Samaritan's motion to dismiss (Docket 33) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to consolidate (Docket 24) is denied as moot.

Dated April 13, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE